**SUPERIOR LLOYDS OF AMERICA v. FOXWORTH.**

No. 5590.

Court of Civil Appeals of Texas. Amarillo.

Feb. 14, 1944.

Rehearing Denied March 20, 1944.

Earnest, Bondies & Flahive, of Dallas, and Collins, Williams & Garrison, of Lufkin, for appellant.

Campbell & Foreman, of Livingston, and Allen, Helm & Jones, of Houston, for appellee.

STOKES, Justice.

This is a workmen's compensation case instituted by appellee, Lewis Foxworth, against appellant, Superior Lloyds of America, in the nature of an appeal from an award of the Industrial Accident Board. Appellee sought recovery for total disability and continuing partial disability as a result of alleged injuries received by him while performing labor in the construction of a road as an employe of Austin Road Company, for whom appellant carried compensation insurance. The case was submitted to a jury upon special issues, in answer to which the jury found that appellee had been injured while in the course of his employment substantially as alleged by him and that he was partially and permanently disabled by reason thereof. The parties stipulated that the recovery, if any, should be in a lump sum, and the court entered judgment in appellee's favor for the total sum of $2,090.01, from which appellant has duly perfected this appeal.

The first assignment of error presented by appellant pertains to the charge of the court wherein the jury was instructed that the term "preponderance of the evidence" meant the greater weight or degree of credible testimony before them. Appellant contends that the definition was erroneous because it permitted the jury to consider either the weight or the degree of the testimony and that these terms refer to different elements, the disjunctive "or" permitting them to consider the degree of the evidence to the exclusion of its weight. We find no merit in this contention. The word "weight" refers to ponderousness, while the word "degree" refers to grade or the distance one thing may be removed from another. It means relative quantity or intensity and takes in all those

grades of evidence from scintilla to overwhelming or conclusive. The terms "weight" and "degree" are used synonymously by the courts, both referring to the preponderance of the evidence. National Bank of Garland v. Gough, Tex.Civ.App., 197 S.W. 1119; Texas Employers' Ins. Ass'n v. Galloway, Tex.Civ.App., 40 S.W. 2d 973; Sowle v. Sowle, 115 Neb. 795, 215 N.W. 122.

■ Appellant further complains of the definition because the court instructed the jury that the term "preponderance of the evidence" meant the greater weight or degree of the "testimony," the complaint being that by using the word "testimony" the court confined the jury to the parol testimony given by the witnesses and excluded any other evidence that might have been introduced. While there is a distinction between the terms "evidence" and "testimony," they are frequently used synonymously by the courts, especially where nothing occurs in the trial or is presented by the record that requires a distinction between them to be observed. The record in this case reveals nothing of that nature and, therefore, no error is shown. Goodwin v. Mortsen, 60 Tex.Civ.App. 287, 128 S.W. 1182; Dial v. Gardner, 104 S.C. 456, 89 S.E. 396; Crumley v. State, 18 Ala.App. 105, 89 So. 847; Lilly v. Russell & Co., 4 Okl. 94, 44 P. 212.

■ The next contention presented by appellant is that the court erred in refusing to submit its requested special issues inquiring as to the number of weeks the appellee's partial incapacity, if any, would continue and whether he had recovered or would recover. These special issues pertained to the question of whether or not appellee had suffered partial incapacity and, if so, whether it was permanent or temporary. In the general charge the court submitted Special Issues Nos. 9 to 13, inclusive, in which the jury was required to find: whether or not appellee had suffered, or would suffer, partial incapacity to work as a result of the injuries sustained by him; the percentage of disability, if any, to work and earn money; whether or not the partial incapacity was permanent; and the period of time, if any, the partial incapacity had continued or would continue. This last special issue was conditioned upon the jury's answering Special Issue No. 12 in the affirmative. Special Issue No. 12 had asked the jury if they found that the partial incapacity was temporary, and they answered it in the negative, thus finding that it was not temporary in its nature. In answer to Special Issue No. 11, they had found that the partial incapacity was permanent. In accordance with the instruction of the court, the jury did not answer Special Issue No. 13, in which the court asked them to find what period of time the partial incapacity to work had, or would, continue. This was because they had found the partial incapacity to be permanent. From this it will be seen that in the general charge the court fully submitted the question of whether or not the partial incapacity existed and whether it was permanent or temporary. Having submitted these issues in the general charge, no error was committed by the court in refusing the requested special issues.

■■ Appellant next complains of the refusal of the court to give to the jury its Requested Special Issue No. 6, reading as follows: "What do you find from a preponderance of the evidence the plaintiff is capable of earning on an average per week during the period of his partial incapacity?" In the main charge Special Issue No. 10–A was submitted to the jury as follows: "What percentage of disability to work and earn money do you find from a preponderance of the evidence plaintiff has received as a result of the injuries sustained by him?" To this special issue the jury answered, "60%." Appellant presents two objections to this action of the court. First, he asserts that the court erred because the word "disability" was employed instead of the word "incapacity," as used in the statute, and that in defining the terms used, the court defined "incapacity" and did not give to the jury a definition of the phrase "disability to work." Secondly, appellant complains that by asking the jury what disability appellant "has received," the court limited the jury to such disability as had prevailed up to the time of the trial, which could not have equaled the amount of the judgment. The contention is that if the court had given the Requested Special Issue No. 6 instead of Special Issue No. 10–A, these objectionable features would have been avoided and the question properly submitted; whereas, in giving Special Issue No. 10-A and refusing to submit Requested Special Issue No. 6, the court committed reversible error. We do not agree with appellant in this contention. The terms "disability" and "incapacity" are synonymous in their nature. They are so treated in standard dic-

tionaries, and an examination of the opinions of the courts in reference thereto will reveal that the two terms are used interchangeably by the courts in many cases. This question was passed upon by this court in the case of Texas Indemnity Ins. Co. v. Pemberton, 9 S.W.2d 65, wherein a contention very similar, if not identical, with that here presented by appellant was overruled. Moreover, it is clear from the record that in using the term "has received" in reference to the disability, the court was dealing with the nature of disability the appellee had suffered, and the jury found in answer to Special Issues No. 11 and 12 that it was partial and permanent. If the disability was permanent, it could not have been confined to the period of time that had elapsed between the date of the injury and the trial. We find no error revealed by these assignments and they will be overruled.

■ The next contention refers to the admissibility of certain testimony. While appellee was on the stand, his counsel asked him whom he first told of his injury after it happened. He replied that he told the foreman on the job, the man who had hired him. He was then asked what the foreman said, and appellant objected to the witness answering the question on the ground that it was irrelevant, immaterial, and could not bind the appellant. The objection was overruled and the witness answered the question by stating, in effect, that the foreman expressed the apprehension that he would have to get someone who did not have any feet to operate the machine or device upon which appellee had been injured. This statement of the foreman evidently was provoked by the fact that appellee's foot had been injured by the machine and shortly before that injury another employe's foot had been injured by the same machine. The testimony was irrelevant and immaterial but we find nothing in it that purports to admit any liability of appellant or bind it in any way. It is obvious therefore, that no harm could have resulted to appellant by its admission.

■■ The next point raised by appellant refers to certain testimony of appellee while he was testifying as a witness. His counsel asked him if he told Dr. Flowers immediately after he was injured and while he was at the hospital that his back was injured and if he pointed out the place on his back that was giving him pain. Appellant objected to the question upon the ground that an answer to it would be self-serving. The objection was overruled and the witness said he told Dr. Flowers that his back was hurting and that he pointed out to him the place on his back that was giving him pain. We fail to find any valid objection to this testimony. It was not self-serving in its nature, as contended by appellant, but if it was objectionable in any sense, it cannot be urged as error, because Dr. Flowers was called as a witness by appellant and upon cross examination he testified, without objection, to the same facts. He said he examined appellee at the hospital shortly after the injury and that appellee told him his back was hurting. He said he examined appellee's back but that the only treatment he gave him was for the injury to his foot.

■ The next and final contention presented by appellant refers to alleged misconduct of counsel for appellee during the trial and is presented in its assignments of error Nos. 9 to 13, inclusive. Part of the alleged misconduct occurred during the examination of witnesses but most of it occurred during the argument. That portion which arose during the argument of the case is presented here only by copies of the argument attached to the motion for a new trial. In this way we are informed of what the argument was, but the record does not inform us as to whether any of it was provoked by the argument of counsel for appellant. No bills of exception were preserved upon which the trial court was given an opportunity to explain the background of the argument and, as far as we can ascertain from the record, none of it pertained to matters aliunde. The court sustained practically all of the objections made by appellant's counsel to the argument and instructed the jury not to consider it. We have carefully examined all of them and, in our opinion, no reversible error is shown. To include in this opinion those portions of the argument to which counsel objected, the grounds of the objections, and the rulings of the court thereon would unduly extend this opinion, but suffice it to say that the conduct and argument complained of were not of that character which is condemned by the courts as constituting repeated and persistent efforts to inject into the case matters that have been ruled out by the court, nor did it bring into the case matters outside the record. It all pertained to testimony and demeanor of various witnesses, and we think was of such a nature

that, if it was objectionable, any harm that might have resulted from it was entirely removed by the action of the court in sustaining the objections and instructing the jury not to consider it.

We have carefully examined all of the assignments of error and contentions presented by appellant and, in our opinion, no reversible error is shown. The judgment of the court below will therefore be affirmed.